UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>REUBEN EARL HAYES,<br><br>　　　　　Defendant. | Case No. 13-cr-00085-JD-1<br><br>**ORDER DENYING DEFENDANT'S MOTION TO EXCLUDE EVIDENCE OF DNA TESTING** |

## INTRODUCTION

Defendant Reuben Hayes is charged with multiple counts of unlawful possession of a firearm and drug offenses. The evidence linking Hayes to the firearms is based primarily on DNA samples taken from the firearms. Hayes moves to exclude this evidence under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The Court denies the motion.

## BACKGROUND

Hayes was charged with illegally possessing a .25 caliber automatic pistol after an incident on June 3, 2012. Dkt. No. 113. He was arrested again on October 19, 2012 for illegally possessing a .357 revolver. *Id.* DNA testing was used to determine whether Hayes handled these firearms. *Id.*

California Highway Patrol ("CHP") officers made the initial DNA collection by swabbing the .25 caliber. *Id.* The government sent the CHP's swabs to the Serological Research Institute ("SERI") with the two recovered firearms and a reference sample of Hayes's DNA. *Id.* SERI Forensic Serologist Casseday Baker took two independent samples from each firearm (Items 3-1 and 3-2 from the .25 pistol and Items 5-1 and 5-2 from the .357 revolver). Dkt. No. 119.

1    Baker used the PCR/STR method to conduct forensic analysis of the DNA samples and
2 widely recognized statistical tools to determine the significance of the matches found. Dkt. No.
3 119. There are three statistical models used to interpret the results of PCR/STR DNA testing, but
4 only two are at issue in this case. *Id.* They are the Combined Probability of Inclusion ("CPI") and
5 the Random Match Probability ("RMP"). *Id.* CPI expresses the probability that a person
6 randomly chosen from the population can be included as a contributor of the given profile. *Id.*
7 RMP expresses the probability that a particular DNA profile would be found at random among the
8 persons in a given population. *Id.* Baker interpreted the results of Items 3-1 and 3-2 (the .25
9 samples) with RMP and the results of 5-1 and 5-2 (the .357 samples) with CPI. Dkt. No. 120.

10   Based on the PCR/STR results, Baker concluded that the DNA recovered from the CHP
11 swabs was weak and incomplete, and therefore uninterpretable. Dkt. No. 120. The samples Baker
12 took on his own were analyzable. All four samples were "mixed samples," meaning the samples
13 contained DNA from more than one source. *Id.* He compared the DNA profile found in Items 3-
14 1, 3-2, 5-1 and 5-2 to Hayes's DNA in the reference sample. *Id.* For Items 3-1 and 3-2, Baker
15 concluded that Hayes was possibly the major contributor. *Id.* The chance that someone unrelated
16 to Hayes would be included in the DNA would be 1 in 50 trillion for Item 3-1 and 1 in 300
17 quintillion for Item 3-2. *Id.* For Items 5-1 and 5-2, Baker concluded that Hayes was a possible
18 contributor and the chance that someone unrelated to him would be included would be 1 in 2,000
19 and 1 in 600, respectively. *Id.*

## DISCUSSION

21   Hayes challenges the admissibility of the DNA evidence on several grounds and contends
22 it should be excluded as unreliable and invalid under Federal Rule of Evidence 702 and *Daubert v.*
23 *Merrill Dow Pharms.*, 509 U.S. 579, 589 (1993). The Court has carefully considered the briefs
24 and materials submitted by the parties, which include dueling declarations by Baker and Keith
25 Inman, who defendant proffers as a DNA expert, and the oral arguments at the hearing. Overall,
26 the defense challenges go to the weight and persuasiveness of the evidence rather than its
27 admissibility. Hayes may have productive grounds for cross-examination of Baker at trial, but the
28 challenged evidence has sufficient reliability and validity to be admitted.

The governing standards here are well settled. The Court's duty is to serve as a gatekeeper to ensure that "all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrill Dow Pharms.*, 509 U.S. 579, 589 (1993); *see also Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (interpreting Rule 702 to require that expert testimony "be both relevant and reliable") (quotations and citation omitted). "Relevance simply requires that '[t]he evidence . . . logically advance a material aspect of the party's case.'" *Estate of Barabin*, 740 F.3d at 463 (citation omitted). Reliability means the proffered expert opinions and testimony have "a reliable basis in the knowledge and experience of the relevant discipline." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999). To determine reliability, the Court makes "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. As the Supreme Court has underscored, "[t]he focus, of course, must be solely on principles and methodology, not on the conclusions they generate." *Id.* at 595; *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (the "test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology") (citation omitted); Fed. R. Evid. 702. An expert's conclusions may be vigorously cross-examined and debated in argument before the jury, but they will not be deemed inadmissible when relevant and based on reliable methods.

Hayes initially brought a slew of challenges to the DNA evidence: (1) the methodology and procedures used by SERI are not supported by appropriate validation studies; (2) SERI violated its own protocols for interpreting DNA mixtures; (3) the methodology and procedures SERI utilized are the subject of unresolved debate in the scientific community; (4) SERI's procedures have no known or predictable error rates; (5) no clear standards govern SERI's procedures for testing the DNA mixture samples in this case; and (6) the SERI's statistical conclusions were improperly calculated and violate national standards. Dkt. No. 113.

But the disputed issues were substantially narrowed at the hearing. Defense counsel agreed that PCR/STR testing is widely accepted in the scientific community and not subject to a *Daubert* attack here. Defense counsel also agreed that Inman misunderstood which statistical tool

Mr. Baker used to interpret Items 3-1 and 3-2. Inman declared that Baker violated SERI's protocol by using the CPI method to interpret Items 3-1 and 3-2, when protocol required Baker to use RMP. Dkt. No. 115. However, Baker did, in fact, use RMP to analyze these samples. Dkt. No. 121, Exs. H, I. The parties have agreed that the only remaining issues are: (1) whether the mixed samples were properly analyzed; and (2) whether Baker followed appropriate procedures with regard to the injection time of certain DNA samples.

**1. The Mixed Samples**

As an initial matter, Hayes challenges generally the reliability of PCR/STR analysis when applied to mixed DNA sources, and contends that the interpretation of mixed samples in that context lies beyond the outer edge of current methods and knowledge. Dkt. Nos. 113, 126. This goes too far. The use of PCR/STR "'technology to analyze a mixed-source forensic sample is neither a new or novel technique or methodology.'" *Robinson v. Hedgpeth*, No. CV 12-2084, 2013 WL 6185027, at *19 (C.D. Cal. Nov. 25, 2013) (citing *People v. Smith*, 107 Cal.App. 4th 646, 665 (2003)). Hayes has not cited any legal or scientific authority to the contrary.

Hayes also challenges whether SERI had adequate protocols and operating procedures in place to analyze mixed samples. While PCR/STR testing of mixed samples is a sound method, forensic labs should have standardized protocols in effect to address the potential issues arising out of mixed sample analysis. *See, e.g., United States v. Trala*, 162 F.Supp.2d 336, 349 (D. Del. 2001) (allowing admission of mixed sample testing "[i]n light of the controls to reduce the effects of inherent flaws.").

In this case, both the government and Hayes cited to the protocols outlined by the Scientific Working Group on DNA Analysis Methods ("SWGDAM") as a source of guidance on mixed sample analysis. Dkt. Nos. 113, 119. SWGDAM is responsible for providing recommendations to the FBI Director on quality assurance standards for DNA analysis and for periodically releasing guidelines for proper DNA analysis. Dkt. No. 120. Its most recent guidelines, issued in 2010, specifically address mixture samples. *Id.* at Ex. D. Paragraphs 3.4 and 3.5 require laboratories to establish guidelines for evaluating mixed sample DNA. *Id.*

4

Here, as in *Trala* and in compliance with SWGDAM's recommendations, the government presented evidence that SERI had implemented and adhered to protocols for evaluating mixed samples. The government cites to the SERI Standard Operating Procedure Manual on PCR DNA Frequency Calculation for support. Dkt. No. 115, Ex. D. Paragraph 2.3.1 requires that when an analyst finds a clear major (or stronger) donor, the analyst should interpret the sample using the product rule, such as RMP. *Id.* Baker found a clear major donor for Items 3-1 and 3-2, and interpreted the samples using RMP. Dkt. No. 121, Exs. H, I. Paragraphs 2.3.3 and 2.3.4 require that when an analyst finds no clear major or minor donor, the analyst may choose to use CPI. Dkt. No. 115, Ex. D. Baker found no clear major or minor donor for Items 5-1 and 5-2, and interpreted the samples using CPI. Dkt. No. 121, Exs. J, K. These facts amply establish that SERI had an adequate protocol for handling mixed samples, and that Baker complied with SERI's protocol in analyzing the Hayes samples.

Consequently, the mixed DNA evidence is admissible. Hayes certainly retains the right to grill Baker on cross-examination about the analysis and his conclusions. *See Kumar v. Yates*, No. CIV S-09-2455, 2011 WL 2295030, at *13 (E.D. Cal. June 8, 2011) (holding that "[n]othing prevented [defendant] from introducing expert testimony in an attempt to show, for example . . . that DNA matching his profile would not have been found in the mixed-source sample . . . had different methodology been used. Such evidence would have gone to the weight, rather than the admissibility of the DNA evidence."); *United States v. McCluskey*, 954 F.Supp.2d 1224, 1244 (D.N.M. 2013) (once "PCR/STR methodology is held admissible under *Daubert* and Rule 702" the "challenges to the particular procedures and instrumentalities used in applying that method go primarily to the weight of the DNA evidence and not to admissibility."). But he is not entitled to bar the jury from hearing the evidence at all.

**2. Injection Time**

Hayes also challenges Baker's method for timing the injection of the DNA samples for analysis. Baker injected Items 5-1 and 5-2 into a testing instrument for both 10 and 20 seconds. Dkt. No. 120. Inman states that Baker violated SERI's protocols by choosing to interpret the 20-second injection for Item 5-1 but the 10-second injection for Item 5-2 and not correctly correlating

5

injection time to sample size. Dkt. No. 116.

The record does not support this argument. On the issue of different injection times, the government's evidence shows, and defense counsel conceded at the hearing, that Baker interpreted the 20-second injection for both 5-1 and 5-2. Dkt. No. 121, Exs. N, O.

On the issue of sample size, Inman improperly relies on only a portion of SERI's protocol correlating sample size to injection time. Inman claims that Baker used 200 picograms (pg) of DNA to analyze Items 5-1 and 5-2, or three times more than the necessary amount of DNA to produce a full DNA profile with a 20-second injection time. Dkt. No. 120. Using 200 pg at 20 seconds, he argues, risks a rougher baseline and the occurrence of misleading artifacts such as dye blobs. *Id.* But Inman misreads SERI's Validation Summary for the instrument used in this case. SERI's summary explicitly states that when interpreting a 20 second injection, 63 pg is the *minimum* input DNA for a full profile, not the adequate or maximum amount. Dkt. No. 121, Ex. P. So using 200 pg of DNA is not three times more than is necessary, but rather three times more than the minimum amount required for a 20-second injection.

Moreover, the Validation Summary explicitly states that a rougher baseline and more artifacts are a risk with more than 500 pg of DNA, not when the sample is only 200 pg. Dkt. No. 121, Ex. P. And even assuming Baker's procedure was flawed, which is not supported by the expert declarations, there is no evidence that a rougher baseline or more artifacts actually obstructed Baker's analysis of any of the samples. While the 20-second injection for Item 5-1 had one more allele than the 10-second injection, both parties agree that Inman excluded this allele from his interpretation. Dkt. No. 116, 120. Additionally, for Item 3-2, Baker interpreted the 10-second injection instead of the 20-second injection because the latter produced off-scale peaks and was uninterpretable. Dkt. No. 120.

**CONCLUSION**

Hayes is free to do his best to convince the jury that Baker's forensic work was shaky and not entitled to any weight. But the DNA evidence offered by the government is reliable and admissible under *Daubert* and Rule 702.

**IT IS SO ORDERED**.

Dated: October 21, 2014

_____
JAMES DONATO
United States District Judge