UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>REUBEN EARL HAYES,<br><br>    Defendant. | Case No. 13-cr-00085-JD-1<br><br>**ORDER GRANTING DEFENSE MOTION IN LIMINE NO. 2 TO SUPPRESS DEFENDANT'S STATEMENTS** |

## INTRODUCTION

Defendant Reuben Hayes is charged with the illegal possession of firearms and drugs. He moves to suppress certain statements made during a traffic stop by the Martinez Police Department on October 19, 2012. Dkt. No. 77. An evidentiary hearing was held on October 15, 2014 where Mr. Hayes and Martinez Police Officers Jeffrey Boyce and Dirk Miller testified. Dkt. No. 129. The Court grants the motion.

## BACKGROUND

At about 7:45 a.m. on October 19, 2012, Officer Boyce and Officer Miller were on patrol in Martinez. Dkt. No. 88, Ex. 1. The officers pulled over a Gold Saturn driving westbound on C Street for driving without a rear license plate. *Id.* The Saturn pulled into the entrance of a parking lot off C street, next to the Contra Costa County Regional Medical Center ("CCRMC"). *Id.* According to testimony presented at the hearing, Boyce had been a volunteer officer for about one month and Miller was his Field Training Officer.

Boyce spoke to the driver, Ms. Shavonda Miles, and determined that she was driving on a suspended license. Dkt. No. 88, Ex. 1. The officer also obtained identification from the rear passenger, Ms. Cristy Jones, and determined she was on probation with a search and seizure

1  clause. *Id.* After exiting the vehicle, marijuana fell out of Jones's purse, so she was arrested and
2  placed in the back of Boyce's patrol car. *Id.* Because Miles was late for work at CCRMC, the
3  officers issued her a citation for driving on a suspended license and allowed her to walk to the
4  medical center. *Id.* The officers decided to impound the Saturn and have it towed to a secure
5  location. *Id.*

6  Miller approached Hayes, who was sitting in the front passenger seat, and asked for his
7  identification. Dkt. No. 89, Ex. 2. At the hearing, Miller said Hayes gave his California
8  Identification card to Miller, who in turn handed it to Boyce to run through the system for
9  warrants and other checks. The incident reports written by Boyce and Miller near the time of the
10 car stop do not mention this. Dkt. Nos. 88, Ex. 1; 89, Ex. 2.

11 After being asked whether he had any marijuana or anything illegal on his person, Hayes
12 handed Miller a small amount of marijuana. Dkt. No. 89, Ex. 2. According to Miller's police
13 report, Hayes produced the marijuana from inside the car door and from his pocket. *Id.* The
14 citation Miller later wrote, however, indicated that Hayes gave him both items from inside the car
15 door.

16 Hayes was removed from the car and handcuffed. Dkt. No. 89, Ex. 2. Miller was then
17 advised by dispatch that Hayes was on probation and non-revocable parole. *Id.* A third officer,
18 Officer Busciglio, arrived on scene in a separate police car. *Id.* Miller testified that he placed
19 Hayes in the back of Busciglio's patrol car, but he did not mention that or Busciglio's arrival in his
20 report. *Id.* Boyce and Hayes testified that Hayes was instead placed on a curb by the Saturn, not
21 in Busciglio's car.

22 Miller eventually unhandcuffed Hayes and had him sign a citation for a minor marijuana
23 violation. Dkt. No. 89, Ex. 2. Miller claims that he then gave Hayes his identification and the
24 citation, and told him he was free to leave but could wait for the tow slip for the Saturn if he
25 wished. *Id.* Hayes testified emphatically that he did not receive either the citation or his
26 identification card, and that he was never told that he was free to leave. Hayes agrees, however,
27 that he was uncuffed and signed the citation with Miller. Dkt. No. 133.

28

2

The parties dispute what happened after Hayes signed the citation. Hayes testified that directly after signing the citation, Miller joined Boyce at the trunk and then quickly returned to re-handcuff Hayes. But according to Miller, Hayes was unhandcuffed and sat against a fence near the passenger side of the Saturn to wait for the tow slip while Boyce conducted an inventory search of the Saturn's trunk. Dkt. No. 89, Ex. 2.

The officers' recollections and reports differ on what happened during the trunk search. At the hearing, Miller testified that he stood fifteen feet from Hayes and five feet from Boyce during the trunk search. But his incident report states that he was close enough to the trunk that he personally found marijuana in it. Dkt. No. 89, Ex. 2. Boyce, however, testified that Miller was closer to Hayes during the search. Boyce's testimony and report state that Boyce conducted the trunk search alone. Dkt. No. 88, Ex. 1. Boyce was very clear in testifying at the hearing that he alone was at the trunk and he alone uncovered its contents.

Boyce testified that, after finding marijuana and a gun in the trunk, he held the gun up to show Hayes and asked him three questions. The officers' testimony and reports again conflict about the order and substance of the questions asked. According to Boyce's report, he first asked whether the drugs and gun belonged to Hayes, and Hayes said no. Dkt. No. 88, Ex. 1. There is no mention of this question in Miller's report. Dkt. No. 89, Ex. 2. Boyce also asked whether the clothing in the trunk belonged to Hayes, and Hayes said yes. Dkt. Nos. 88, Ex. 1; 89, Ex. 2. Boyce stated that Hayes then asked for a sweater from the bag of clothing, but, again, there is no mention of this in Miller's report. Dkt. No. 89, Ex. 2. Boyce also asked why Hayes's clothing was in the same bag as the drugs and gun, and Hayes said he did not know. Dkt. Nos. 88, Ex. 1; 89, Ex. 2.

The parties dispute whether Hayes was handcuffed when Boyce questioned him. Hayes testified that Boyce and Miller were at the trunk of the car when Miller came back to where Hayes was standing near the front of the car and handcuffed him for a second time -- all before either officer asked him any questions about the items in the trunk. Hayes testified that Miller then walked him by the trunk of the car, where Boyce questioned him. The officers testified that Hayes was unhandcuffed and standing next to a fence on the passenger side of the Saturn when the

3

questioning took place. There is no dispute that the officers never administered Miranda warnings to Hayes before asking him about the guns, drugs and clothes in the trunk.

Hayes contends that he was subjected to an improper custodial interrogation about the contents of the trunk. Specifically, he argues that he was in custody and had not been Mirandized when Boyce asked incriminating questions, and that his responses should be suppressed.

**DISCUSSION**

**I.    CUSTODY**

In *Miranda v. Arizona*, the Supreme Court held that a person who "has been taken into custody or otherwise deprived of his freedom of action in any significant way," must, prior to any questioning, "be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). However,

> An officer's obligation to administer *Miranda* warnings attaches only where there has been such a restriction on a person's freedom as to render him in custody. Whether a suspect is in custody turns on whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. This inquiry requires a court to examine the totality of the circumstances from the perspective of a reasonable person in the suspect's position.

*United States v. Crawford*, 372 F.3d 1048, 1059 (9th Cir. 2004) (en banc) (quotations and citations omitted). The custody test is an inquiry into whether "the officers established a setting from which a reasonable person would believe that he or she was not free to leave." *United States v. Kim*, 292 F.3d 969, 973-74 (9th Cir. 2002).

The Ninth Circuit has enumerated five factors that are "among those likely to be relevant to deciding" the question of custody: "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *Kim*, 292 F.3d at 974 (quoting *United States v. Hayden*, 260 F.3d 1062, 1066 (9th Cir.2001)). But "[o]ther factors may also be pertinent to, and even dispositive of, the

1   ultimate determination whether a reasonable person would have believed he could freely walk
2   away from the interrogators; the [five] factors are simply ones that recur frequently." *Kim*, 292
3   F.3d at 974.

4       The question of where the burden of proof falls in a custody dispute is not settled. The
5   government contends that Hayes bears the burden of proving he was in custody when questioned.
6   But "it appears that the Ninth Circuit has never decided which side bears the initial burden of
7   proving custody or a lack of custody." *United States v. Paiz*, No. CR 06-00710 WHA, 2007 WL
8   1052891, at *3 n.2 (N.D. Cal. Apr. 5, 2007). The government states that the Fifth Circuit has held
9   that a defendant bears the burden of proving he was in custody. *United States v. Davis*, 792 F.2d
10  1299, 1308 (5th Cir. 1986). The government also cites to *United States v. Sciolino*, an Eastern
11  District of California case which in turn cites to an Eighth Circuit case holding with the Fifth
12  Circuit. *United States v. Sciolino*, No. 2:09–CR–0070 FCD, 2009 WL 29145703, at *3 (E.D. Cal.
13  Sept. 9, 2009). *Sciolino*, however, also expressly recognizes that the Ninth Circuit has not
14  addressed the issue. *Id.* In fact, the *Sciolino* court noted that the panel in *United States v.*
15  *Bassignani* initially addressed the issue of which party bears the burden of proof on custody but
16  deleted that discussion in a subsequent amended opinion. *Id.* at *3 n.3. *Compare United States v.*
17  *Bassignani*, 560 F.3d 989, 993 (9th Cir. 2009) *with United States v. Bassignani*, 575 F.3d 879, 880
18  (9th Cir. 2009).

19      The Ninth Circuit has not issued another opinion on this question since *Bassignani*.
20  Consequently, no binding precedent allocates the burden of proof in this case. But this Court does
21  not need to resolve the issue or forecast whether the Ninth Circuit would adopt the Fifth and
22  Eighth Circuit's approach. Even placing the burden on the defendant, Hayes has sufficiently
23  demonstrated that he was in custody during the time Boyce questioned him.

24      In determining whether Hayes was in custody, the driving question is whether a reasonable
25  person in his position would have felt free to leave. Here, Hayes did not come to the police
26  voluntarily, but was stopped by two officers in a patrol car, who were then joined by a third officer
27  in another car. Miller alleges Hayes remained on scene to retrieve the tow slip, but Hayes did not
28  own the Saturn. In fact, the car's owner worked nearby and she could have retrieved the tow slip

herself. Three officers and two patrol cars were present. The officers had previously seized Hayes's identification, and the record does not establish they had returned it to him. Boyce testified that he "held up the gun" found in the Saturn's trunk -- the car Hayes had just been pulled over in -- and asked Hayes, "Is this yours?" This was more than an innocuous question because the officers already knew from dispatch that Hayes was on probation and parole, and likely could not possess a firearm. Hayes was then pressed by Boyce with additionally pointed questions about why the gun and drugs were found in a bag with Hayes's clothing.

These facts alone indicate that a reasonable person would likely not have felt free to walk away in the manner the government urges. The factor that tips the analysis firmly in favor of a finding of custody is that Hayes was handcuffed when Boyce questioned him. It is certainly true that Hayes and the officers disagree on this fact. But the Court finds that Hayes proffered the more reliable testimony on this issue. Hayes's testimony was clear and concise. The officers' was not. As detailed above, the incident reports prepared by the officers near the time of the stop in 2012 are inconsistent in several ways, and their testimony at the evidentiary hearing only compounded the factual conflicts and differences.[1] Even if Hayes is assumed to carry the burden of proof of custody, he established that he was in handcuffs and the government failed to overcome that evidentiary fact.

No reasonable person would have felt free to leave in these circumstances after being handcuffed, and the Court finds that Hayes was in custody for purposes of *Miranda*. The statements Hayes made in response to Boyce's questions are therefore inadmissible and will be excluded from evidence at trial.

**I.    VOLUNTARY STATEMENT**

Even if custody occurred, as the Court finds, the government argues that one particular statement ought to be admitted anyway because Hayes volunteered it. Dkt. No. 87. That

---

[1] Among other facts, the officers contradicted each other and themselves about when each officer possessed Hayes's identification, where Hayes was placed after the initial handcuffing, the location of each officer during the trunk search, whether and when Miller participated in the trunk search, and the sequence and substance of Boyce's questions to Hayes.

statement was Hayes's request to Boyce that Boyce hand him a sweater from the bag found in the trunk. *Id.*

The government is banking here on the voluntary statement exception to police interrogation. A voluntary statement is "any statement given freely and voluntarily without any compelling influences." *Miranda*, 384 U.S. at 478. "Voluntary statements are not considered the product of interrogation." *United States v. Washington*, 462 F.3d 1124, 1132 (9th Cir. 2006) (citation omitted). Interrogation means "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response." *Id.* The test is an objective one; the subjective intent of the police is relevant, but not conclusive. *United States v. Booth*, 669 F.2d 1231, 1238 (9th Cir. 1981).

The context of the statement informs the answer to the government's argument. Hayes asked for a sweater while handcuffed and after being confronted about a gun and drugs found in the trunk. Asking Hayes if the clothes in the trunk belonged to him -- clothes found in the same bag as drugs and a gun -- was reasonably likely to elicit an incriminating response. As Boyce's hearing testimony indicates, he asked the question in an attempt to elicit evidence of crime. Hayes's response was the product of that interrogation. He responded directly to the question, answering "yes," and, according to Boyce, immediately followed his answer with a request for one of the items Boyce was asking about.

The government argues that Boyce's question was not reasonably calculated to provoke Hayes's specific request, but provides no authority for the proposition that interrogation must be reasonably calculated to produce the particular incriminating response the officer expected. Because the test for interrogation is an objective one, and a reasonable officer would expect the posed question to elicit an incriminating response, Hayes's statement is not voluntary.

The government cites *United States v. Washington*, in support of its argument that Hayes's statement was voluntary. *Washington*, 462 F.3d at 1132. In that case, the defendant argued that the FBI interrogated him when they asked about his gang moniker before giving *Miranda* warnings. *Id.* The court found that this question constituted "routine gathering of background information" to ensure prisoner safety when placed in a detention center, which is "not

7

interrogation." *Id.* at 1133. None of Boyce's questions involved gathering background information. The case simply does not apply here.

**IT IS SO ORDERED**.

Dated: October 22, 2014

_____
JAMES DONATO
United States District Judge