UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>REUBEN EARL HAYES,<br><br>Defendant. | Case No.  13-cr-00085-JD-1<br><br>**ORDER RE SECTION 2255 MOTION, SUPPLEMENTAL MOTION, AND CERTIFICATE OF APPEALABILITY**<br><br>Re: Dkt. Nos. 285, 295, 312, 314 |

Reuben Earl Hayes is serving a sentence in federal custody after a jury convicted him of one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), two counts of possessing a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a), (b)(1)(C), and one count of possessing a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). Dkt. No. 253. Hayes was determined to be a career offender under Section 4B1.1(a) of the United States Sentencing Guidelines on the basis of prior convictions for injuring his spouse and possessing a controlled substance for sale. Dkt. No. 252. This substantially increased his sentencing guidelines range, and resulted in a sentence of 220 months in custody. Dkt. Nos. 253, 254. Hayes's conviction was affirmed on appeal. *United States v. Hayes*, 709 F. App'x 460 (9th Cir. 2018).

Hayes now challenges his sentence under 28 U.S.C. § 2255 (Section 2255), which allows federal prisoners to file a motion to vacate or correct a sentence imposed in violation of the Constitution or the laws of the United States, among other grounds. He filed a pro se motion alleging that his lawyers had been ineffective in handling his defense. Dkt. No. 285. He also challenged the Sentencing Guidelines calculations used to determine that he was a career offender,

and contended that he is actually innocent of the two firearm charges, and that the combination of all of these alleged problems amounted to a "plain error" warranting a modification of his sentence. *Id.*

While the Section 2255 motion was pending, Hayes filed a pro se "supplemental motion" to vacate his sentence in light of *Rehaif v. United States*, 139 S. Ct. 2191 (2019), which determined that the government must prove beyond a reasonable doubt that a defendant charged with possessing a firearm in violation of 18 U.S.C. § 922(g) "knows of his status as a person barred from possessing a firearm." *Id.* at 2195. Hayes says the government failed to show at trial that he knew he was a felon. The Court appointed an attorney to represent Hayes on the *Rehaif* claim only. Dkt. No. 301. After some delays, *see* Dkt. Nos. 304, 306, 308, 311, counsel filed a new brief on the question. Dkt. No. 312.

The original and supplemental Section 2255 motions are fully briefed. They are suitable for decision without oral argument, and are denied.

The parties' familiarity with the record is assumed. To prevail on a Section 2255 motion, "a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). To set aside the convictions, Hayes had to show that a constitutional error had "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("*Brecht*'s harmless error standard applies to habeas cases under section 2255"). There is also a "general rule that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice," although this rule does not apply to claims in Section 2255 motions based on ineffective assistance of counsel. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

Hayes has not demonstrated that relief under Section 2255 is warranted on the record before the Court. To start, the supplemental Section 2255 motion based on *Rehaif* provides no basis for revisiting the convictions. The parties agree that *Rehaif* applies retroactively, and the

2

Court will so assume without expressly deciding the question. *See* Dkt. No. 312 at 8-9; Dkt. No. 313 at 4.

Hayes's main contention is that the Court may consider only what was presented at trial to determine if he was prejudiced by the government's evidence or lack thereof. That is not the law. Our circuit has concluded that a *Rehaif* claim is best understood "not as a challenge to the sufficiency of the evidence, but rather as a claim that the district court applied the wrong legal standard in assessing [the defendant's] guilt -- specifically, by omitting the knowledge-of-status element now required under *Rehaif*." *United States v. Johnson*, 979 F.3d 632, 636 (9th Cir. 2020). If a defendant did not object at trial, the question is whether a hypothetical "error-free retrial might end more favorably" for the defendant, *id.* at 637, and so there is "no basis" for limiting the scope of review to the trial record, *id.* at 638. Instead, courts should "look beyond the trial record" to determine whether the defendant "must have known of his status as a felon," and may consider evidence such as "uncontroverted" findings in a presentence investigation report (PSR) that the defendant "served prior prison sentences exceeding one year." *United States v. King*, 979 F.3d 1218, 1220 (9th Cir. 2020).

Hayes urges the Court to cabin the application of *Johnson* because it was a direct appeal under a plain error standard of review. But he offers no persuasive reason why the same substantive considerations should not apply in the Section 2255 context. If anything, the reasoning in *Johnson* applies with even more force here in light of the greater burden placed on a defendant to prevail on a Section 2255 collateral attack. *See Frady*, 456 U.S. at 166. The importance of the finality of a criminal judgment -- which is implicated in a Section 2255 motion, but not in a direct appeal -- further weighs against vacating a conviction if it is clear from the record as a whole that the government could prove knowledge-of-status if it were required to do so at trial. *See id.* at 165 (quoting *United States v. Addonizio*, 442 U.S. 178, 184 (1979)); *Brecht*, 507 U.S. at 637. Consequently, the Court joins other district courts in this circuit which have concluded that *Johnson* applies in Section 2255 proceedings based on *Rehaif*, allowing the Court to look beyond the trial record. *See, e.g.*, *United States v. Brown*, No. 2:11-CR-00334-APG, 2020 WL 7319605, at *4 (D. Nev. Dec. 11, 2020).

3

This makes resolving the *Rehaif* claim straightforward. Hayes arguably had cause for not raising this issue on direct appeal because *Rehaif* was an intervening change in the law, but he has not shown that he was prejudiced in any way. Hayes "did not object at trial to the district court's omission of the knowledge-of-status element of the offense," *King*, 979 F.3d at 1220, and has not "dispute[d] the accuracy of the presentence report's description of his criminal history," *Johnson*, 979 F.3d at 639.[1] To the contrary, the parties stipulated before trial that Hayes had "at least one" prior felony conviction. Dkt. No. 146 ¶ 5. That alone is likely enough to reject Hayes's *Rehaif* claim. *See United States v. Benamor*, 937 F.3d 1182, 1188-89 (9th Cir. 2019). Our circuit has applied *Benamor* to precisely that effect in an unpublished memorandum. *United States v. Winn*, 811 F. App'x 1011, 1015 (9th Cir. 2020) (unpublished) ("Winn's stipulation to his prior convictions 'proved beyond a reasonable doubt that [he] had the knowledge required by *Rehaif*.'" (brackets in original) (quoting *Benamor*, 937 F.3d at 1189)).

In any event, the Pre-Sentence Report (PSR) shows that Hayes had nine felony convictions on the record before the arrest and trial here, and all but one of them carried prison sentences longer than one year. *See, e.g.,* Dkt. No. 234 ¶¶ 32, 34-36, 38, 40-44 (showing prison sentences ranging from 16 months to 4 years for eight out of Hayes's nine felony convictions). Three of the prior convictions were for being a felon in possession of a firearm, *id.* ¶¶ 36, 38, 41, which in itself is enough to "show beyond a reasonable doubt" that Hayes "had the knowledge required by *Rehaif*." *Benamor*, 937 F.3d at 1189. In addition, at the sentencing, Hayes's own attorney submitted copies of a judgment abstract for one of Hayes's previous felony convictions, Dkt. No. 246-1 at ECF p. 24, as did the government, Dkt. No. 250 at ECF p. 4.

Consequently, even if there had been some gap in proof at trial, which the stipulation effectively rebuts, these facts amply demonstrate that an error-free trial would end in the same

---

[1] While neither side raised this point, the Court's independent review of the record shows that after the PSR was prepared, Hayes filed a handwritten letter objecting to its recitation of his criminal history. Dkt. No. 232. The objection was based solely on Federal Rule of Evidence 410(a), which makes nolo contendere pleas and statements made during nolo contendere plea proceedings inadmissible. Hayes did not dispute the fact of his past felony convictions or the length of his sentences, or make any other substantive objection regarding his criminal history.

4

result for Hayes on the firearms charge. The government could easily have shown that he "must have known of his status as a felon," *King*, 979 F.3d at 1220, which would doom a direct appeal, and also Hayes's argument under the far more stringent standards of Section 2255, *see Frady*, 456 U.S. at 166.

Hayes's claim for ineffective assistance of counsel, which is based on a litany of criticisms about his attorneys, is equally unavailing. To prevail, Hayes had to show (1) that his representation fell below objectively "reasonabl[e] effective assistance" and (2) a reasonable probability that the result was prejudiced by counsel's actions. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). Deficient performance requires a demonstration that Hayes's lawyers made mistakes so serious that they could not be said to be acting like an attorney guaranteed by the Sixth Amendment. *Id.* at 687. The inquiry is not what counsel might have done, but whether their actual choices were reasonable. *Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). These are high standards, and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Allegations that are merely conclusory are insufficient to support a claim for ineffective assistance of counsel. *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993). The *Strickland* prejudice analysis is complete in itself, and so there is no need for a harmless error review under *Brecht*. *See Musladin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009).

Hayes had five lawyers from his arrest through his trial, and two more after that for sentencing and appellate proceedings. *See* Dkt. Nos. 3, 10, 28, 54, 155, 220, 242. He has not shown that any of them performed deficiently.

Hayes says that his second lawyer "misadvised" him to plead guilty and accept a fifteen-year sentence because he would likely be convicted at trial, and could potentially spend the rest of his life in prison. Dkt. No. 285 at ECF pp. 23-24; *see also* Dkt. Nos. 19 (change of plea minutes), 20 (plea agreement). Even so, this is all beside the point because Hayes rejected the advice, and was allowed to withdraw his guilty plea and go to trial. Dkt. Nos. 58. In addition, the advice was not objectively unreasonable. Hayes was, in fact, convicted by a jury and received a sentence longer than fifteen years (180 months). The advice was consistent with the evidence against him,

5

which was substantial. *See, e.g.*, Dkt. No. 227 at 604-10. And the possibility of a very long sentence was real. One of the crimes Hayes was found guilty of permitted a life sentence, *see* 18 U.S.C. § 924(c), two others had a maximum sentence of twenty years in prison, *see* 21 U.S.C. § 841(b)(1)(C), and the Court ultimately determined that the advisory sentencing guidelines called for a term of imprisonment of between thirty years and life, *see* Dkt. No. 271 at 18 (sentencing transcript).

Hayes says that his second attorney should have filed a motion to suppress under *Franks v. Delaware*, 438 U.S. 154 (1978), which excludes the use of evidence obtained under a warrant based on false affidavit statements. *Franks* requires the defendant to make a "substantial preliminary showing" that a warrant was issued on a false statement, or a statement made "with reckless disregard for the truth." *Id.* at 155. The defendant must prove falsity by a "preponderance of the evidence" at a hearing, and show that probable cause for the warrant was lacking in the absence of the false statements. *Id.* at 156.

None of this was adequately demonstrated here. Hayes did not explain what he believes was false about the affidavits, what his attorney might have done to make a preliminary showing to this effect, or why there would not have been probable cause for his arrest warrant in the absence of the affidavits. His *Franks* argument is vague and conclusory, and does little more than recite legal elements untethered to evidence. This does not make out a claim for ineffective assistance of counsel. *See Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989); *Johnson*, 988 F.2d at 945.

Hayes also claims that his second attorney should have moved for his release under *Gerstein v. Pugh*, 420 U.S. 103 (1975), which requires a preliminary hearing to determine probable cause when a person is arrested without a warrant. But this motion would have been meritless because Hayes was arrested based on a warrant after being indicted by a grand jury, *see* Dkt. No. 1, and a grand jury indictment is conclusive proof of probable cause, *Gerstein*, 420 U.S. at 17 n.19; *see also Kaley v. United States*, 571 U.S. 320, 328 (2014) ("The grand jury gets to say -- without any review, oversight, or second-guessing -- whether probable cause exists to think that a person committed a crime.").

Hayes's contention that his fourth and seventh attorneys were ineffective because they failed to contest whether the firearm at issue in his case moved through interstate commerce is without merit. Hayes says that his conviction under 18 U.S.C. § 924(c) was tainted by his attorneys' inaction, but the government was not required to prove that the firearm moved through interstate commerce to secure a conviction under that statute. *See, e.g.*, *United States v. Davis*, 139 S. Ct. 2319, 2324 (2019) (describing elements of the offense).

In contrast, 18 U.S.C. § 922(g) does require the government to prove that the defendant possessed or received a firearm which has moved through "interstate or foreign commerce." Hayes says his attorneys failed to effectively challenge this element because they remained silent in the face of the government's "critical mischaracterization" that the firearm was manufactured outside California. Dkt. No. 285 at ECF pp. 26. But this argument is based on a misapprehension of the record. The government conceded that the firearm had been manufactured in California, but put forward documentary evidence and witness testimony that it had travelled to Texas at some point before returning there. *See, e.g.*, Dkt. No. 293 (Riebli Decl.), Exh. H, at 597-98 (excerpt from closing statement summarizing evidence). Hayes's fourth attorney refused to stipulate to the interstate commerce element at trial, and cross-examined the government's witnesses. *See* Riebli Decl. ¶ 3; *id.*, Exh. B at 308-12; Dkt. No. 226 at 463-71. Hayes points to nothing that shows that this effort was deficient, and does not indicate what else counsel reasonably should have done.

Hayes faults his fourth attorney for failing to object to the trial testimony of two California Highway Patrol (CHP) officers and a Bureau of Alcohol, Tobacco, and Firearms (ATF) agent. As with the *Franks* contention, these arguments are vague and conclusory. Hayes did not identify the objectionable testimony or the legal basis for excluding it, or explain how the outcome of the trial might have been different without the testimony. *See Johnson*, 988 F.2d at 945. He also misconstrues the record. He says that one of the CHP officers testified about finding drugs after Hayes's arrest despite not having documented this fact. In fact, however, the officer recorded finding "what appeared to be controlled substances" in a written arrest report, and provided a detailed description of the items he found. Riebli Decl., Exh. F, at ECF p. 15.

1    Finally, Hayes says that his attorneys did not challenge whether the government had
2    "permission" to prosecute him in federal court, characterizing this as a jurisdictional issue. Dkt.
3    No. 285 at ECF p. 19.  He points to a Department of Justice (DOJ) policy requiring permission
4    from the Assistant Attorney General to prosecute someone in federal court for conduct that was
5    the subject of prior state-court criminal proceedings, but this policy is merely an "internal
6    housekeeping rule[]" of the DOJ that does not create a jurisdictional bar to prosecution or
7    individually enforceable rights. *United States v. Snell*, 592 F.2d 1083, 1087 (9th Cir. 1979).  It is
8    also unlikely that the DOJ policy would apply here.  Hayes says that state authorities "dropped"
9    initial charges against him for the conduct underlying his current convictions, Dkt. No. 285 at ECF
10   p. 19, and there is no indication that he was prosecuted in any subsequent state court proceeding.
11   It was not unreasonable for Hayes's attorneys to decline to raise this issue, and there is certainly
12   no reason to believe that bringing up the DOJ policy would have changed the outcome of the case.
13   That closes the door to all the ineffective assistance claims.  Hayes's arguments with
14   respect to the career offender guidelines are also a dead letter.  The Court has already stated why
15   Hayes's classification as a career offender was appropriate. *See* Dkt. No. 252.  The Ninth Circuit
16   affirmed the Court's determination on appeal, rejecting substantially the same arguments Hayes
17   makes here. *See Hayes*, 709 F. App'x at 461.  Hayes may not re-litigate this issue under Section
18   2255. *See United States v. Hayes*, 231 F.3d 1132, 1139 (9th Cir. 2000).
19   Hayes's protest that he is actually innocent of unlawfully possessing a firearm, and of
20   possessing a firearm in relation to a drug crime, ignores the Ninth Circuit's determination that
21   there was legally sufficient evidence to convict him of the latter charge. *See Hayes*, 709 F. App'x
22   at 460-61.  Even if the claim were taken up, which would be entirely inappropriate at this stage,
23   Hayes has come nowhere close to "demonstrating doubt about his guilt, and . . . affirmatively
24   prov[ing] that he is probably innocent" of the two firearm charges, which is required for a
25   "freestanding claim of innocence" in a habeas proceeding. *Carriger v. Stewart*, 132 F.3d 463, 476
26   (9th Cir. 1997) (en banc); *see also Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014) ("We
27   have not resolved whether a freestanding actual innocence claim is cognizable in a federal habeas
28   corpus proceeding in the non-capital context, although we have assumed that such a claim is

viable."). This is an "extraordinarily high standard," and new, reliable evidence of innocence is generally necessary. *Jones*, 763 F.3d at 1251 (internal quotation omitted). Hayes points to nothing of this nature.

For the sake of completeness, the Court will give a few examples of why the innocence claim is bankrupt. Hayes says that forensic evidence showed that he had never possessed the firearm he was charged with possessing, but a government forensic expert who ran DNA tests on the weapon came to precisely the opposite conclusion. *See* Dkt. No. 134 (order denying Hayes's motion to exclude DNA evidence). He also repeats an argument he made at trial that another firearm with the same serial number existed, and so the government could not prove that the firearm Hayes possessed had moved through interstate commerce. But a government expert testified that firearms manufacturers use unique serial numbers for every item they produce, and that, to simplify somewhat, the two firearms referred to in the government's records were in fact the same weapon simply referred to by different names. *See* Dkt. No. 226 at 446-47.

Hayes also says that the vehicle in which the firearm was found had other occupants, and that one of them was the weapon's owner. But the government adduced evidence that Hayes was the owner and driver of the car. *See, e.g.*, Dkt. No. 227 at 604-10 (summarizing evidence). This tied Hayes to the firearm because it was found on the driver's-side floorboard of the vehicle. *See* Dkt. No. 224 at 126.

Because Hayes has not identified any individual material errors that might warrant modifying his conviction, his theory of error-in-the-aggregate does not fly. *See Parle v. Runnels*, 387 F.3d 1030, 1045 (9th Cir. 2004).

Haye's motions are denied. With respect to an appeal, the Court finds that no reasonable jurist would disagree with the conclusion that Hayes has not made a substantial showing of the denial of a constitutional right, and so a certificate is denied. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

This leaves two final matters. First, Hayes's motion for default judgment, Dkt. No. 295, is denied. It is based on the government's failure to submit its opposition brief to Hayes's original Section 2255 motion by the date that it was originally due. But the Court could have resolved

Hayes's claims on the merits without any response at all from the government. *See Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir. 1990). Even if that were not that case, the government requested and received an extension of time in advance of the original deadline, Dkt. No. 291, and it met the new deadline, *see* Dkt. No. 292.

Second, Hayes filed a "supplemental" memorandum in support of his Section 2255 petition asking for compassionate release under 18 U.S.C. § 3582(c)(1)(A), which allows the Court to reduce a sentence of imprisonment for "extraordinary and compelling" reasons. Dkt. No. 314. The legal basis for the request is unclear. Hayes's main contention seems to be that a prior state-court conviction that led to his classification as a career offender does not fit the definition of a "serious drug offense" under 18 U.S.C. § 924(e)(2), which allows for heightened penalties for defendants who have committed such offenses in the past, because the conviction could not have resulted in a prison term of "ten years or more." *Id.* Hayes did not receive an enhanced sentence under this statute, and its relevance to his case is left completely unexplained.

To the extent Hayes is arguing that this is a reason for finding that his state-court conviction cannot support a career offender determination, that is incorrect. Hayes was determined to be a career offender under Section 4B1.1(a) of the sentencing guidelines, which requires that the defendant have two prior felony convictions for "either a crime of violence or a controlled substance offense." Section 4B1.2(b) of the guidelines defines a "controlled substance offense" as "an offense under state law, punishable by imprisonment for a term exceeding one year," involving drug trafficking or possession. The drug trafficking offense Hayes was convicted of allowed for a term of imprisonment between two and four years, *see* Cal. Health & Safety Code § 11351, and so it falls squarely within that definition.

Consequently, there is no basis for relief under 18 U.S.C. § 3582(c)(1)(A). Hayes also does not indicate that he met the mandatory administrative prerequisites for filing for compassionate release, which is another reason to deny the request. *See, e.g.*, *United States v. Watkins*, No. 14-CR-00556-JD-1, 2020 WL 4702151, at *2-3 (N.D. Cal. Aug. 13, 2020) (defendant must either exhaust administrative rights to appeal failure of the Bureau of Prisons to

bring a compassionate release motion on his behalf, or wait thirty days after filing a release request with the warden of his facility).

**IT IS SO ORDERED.**

Dated:  April 13, 2021

JAMES DONATO
United States District Judge